IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BONENBERGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-CV-00788 |
| | ) | |
| THE CITY OF ST. LOUIS / | ) | |
| ST. LOUIS METROPOLITAN POLICE | ) | |
| DEPARTMENT | ) | |
| | ) | |
| and | ) | |
| | ) | |
| D. SAMUEL DOTSON, III, in his | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

## PARTIES & JURISDICTION

1.  Plaintiff, David Bonenberger (hereinafter "Bonenberger"), is a resident of the City of Waterloo in the State of Illinois and a citizen of the United States of America.  At all times relevant herein, Bonenberger was employed by the City of St. Louis through the St. Louis Metropolitan Police Department (hereinafter "Department"), located in the City of St. Louis, State of Missouri, in the Eastern Division of the Eastern District of Missouri.

2.  Defendant City of St. Louis, Missouri (hereinafter "City") is a municipal corporation organized and existing under the laws of the State of Missouri.  More specifically, it is a charter city that has operated the Department since control was returned to the City on or about August 31, 2013.

3. Defendant D. Samuel Dotson, III (hereinafter "Dotson") was at all times relevant herein and is the Department's Chief of Police. He has ultimate supervisory authority over all facets of the Department. He is sued in his individual and official capacities.

4. The adverse employment actions Bonenberger suffered as set forth in more detail below occurred in the City of St. Louis, State of Missouri, within the Eastern Division of the Eastern District of Missouri.

5. This action is brought pursuant to 42 U.S.C. §2000(e) *et seq.*, the 1st Amendment to the United States Constitution, and 42 U.S.C. §§ 1981 and 1983, as well as § 213.010 *et seq*. R.S.Mo. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

7. Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTS COMMON TO ALL COUNTS

8. Bonenberger has been an employee of the Department since October 1993 and was promoted to the rank of sergeant on March 18, 2009.

9. On or about January 5, 2012, Bonenberger filed a lawsuit styled *Bonenberger v. St. Louis Metropolitan Police Department, et al.,* Case No. 4:12-CV-0002-CDP in the United States District Court for the Eastern District of Missouri. The lawsuit, which was filed against the Department's Board of Police Commissioners (then Bonenberger's employer), alleged race discrimination and a conspiracy to discriminate against Bonenberger after he (a Caucasian male) was not made the Assistant Director of the Police Academy, although much more qualified for the position than the African American female selected as the Assistant

2

Director. Chief Dan Isom (hereinafter "Isom"), Lt. Col. Reggie Harris (hereinafter "Harris"), and Lt. Michael Muxo (hereinafter "Muxo") were also named as defendants in the lawsuit. The defendants in *Bonenberger v. St. Louis Metropolitan Police Department, et al.* are hereinafter collectively referred to as the "Lawsuit Defendants."

10. On August 21, 2013, a jury returned a verdict in Bonenberger's favor, finding that he was discriminated against because of his race and that Harris and Muxo conspired to discriminate against him.

11. The jury assessed damages of $620,000.00, ordering all Lawsuit Defendants to pay $200,000.00 in actual damages and Harris to pay $300,000.00, Muxo to pay $100,000.00, and Isom to pay $20,000.00 in punitive damages.

12. Shortly after the jury returned its verdict in August 2013, the Department began an Internal Affairs Division investigation into whether Harris and Muxo discriminated against Bonenberger and conspired to do so. At the time, Rule 12.002 of the Police Manual stated:

> … the Board will not tolerate, condone, or allow unlawful harassment or discrimination by employees … and will consider such acts as serious employee misconduct. Further, the Board will take direct and immediate action to prevent and to remedy all verified instances of unlawful harassment and discrimination.

13. In September 2013, shortly after the jury found Bonenberger had been discriminated against, Dotson sent a Department-wide email that stated:

> Let it be known that racism or discrimination of any kind will not be tolerated within [the] police family. … If any member of this department … engages in this type of activity, they will not have a place here with us.

14. Despite Dotson's claim that discrimination would not be tolerated in the Department, Bonenberger later learned that on or about October 22, 2014, Dotson caused the

3

Internal Affairs Division investigation into the discrimination against him to be closed.  The investigation was closed just two (2) days after the district court issued a Memorandum and Order on October 20, 2014 denying the Lawsuit Defendants' request for post-trial relief and further ordering them to pay Bonenberger an additional $170,000.00 (plus) for costs and attorneys' fees.

15. Upon information and belief, neither Harris, nor Muxo, were ever disciplined as a result of this intentional discrimination, even though it cost the City over $800,000.00 when costs, attorneys' fees and interest were added to the Judgment.

16. On April 29, 2014, the district court entered its Judgment, ordering the Lawsuit Defendants to pay the $620,000.00 in actual and punitive damages awarded by the jury. The court also enjoined the Department and its command staff from illegal discrimination based upon race in future employment decisions, ordered the Department to comply with its own policies regarding the reporting of illegal discrimination, and ordered Dotson, Harris, and Muxo to undergo anti-discrimination training in 2014, 2015, and 2016.  Through the Lawsuit Defendants' attorneys, Dotson objected to being required to participate in this anti-discrimination training.

17. On May 9, 2014, just ten days after the district court entered its Judgment, Bonenberger learned that effective May 12, 2014 Muxo would be assigned to the 5th District, B Platoon, which would put Muxo in regular contact with Bonenberger, who was then assigned to the 6th District, B Platoon.  Additionally, as a result of this assignment, Bonenberger would be required to directly report to Muxo on occasion, after Muxo had been ordered to pay Bonenberger $100,000.00 in punitive damages.

18. This assignment was made even though Muxo had already stated that he could not work with Bonenberger and the district court had ruled that Bonenberger would not be made the

4

Assistant Director of the Academy to remedy the illegal discrimination against him because, among other things, it was "highly probable" that there would be "substantial antagonism" between Muxo and Bonenberger.

19. This antagonism was evidenced by officers telling Bonenberger that Muxo had told them he would stop at nothing when it came to Bonenberger, because Bonenberger had cost Muxo his captain bars.

20. On or about May 19, 2014, Bonenberger complained about this assignment as retaliatory and designed to place him in a hostile work environment.  Thereafter, Bonenberger was transferred to a different platoon, instead of Muxo being reassigned elsewhere.

21. Initially, Bonenberger was given a relief assignment, which meant that he would not evaluate officers under his command because the same officers would not be regularly assigned to him, thereby reducing his supervisory duties and diminishing his ability to distinguish himself among other sergeants.

22. Shortly thereafter, Bonenberger was given another platoon assignment that forced him to reschedule all previously scheduled time off and work hours, as well as to use additional personal days off to accommodate previously planned vacations.

23. Bonenberger had been assigned to the 6th District, B Platoon for over 5 years at the time of his reassignment.

24. On or about December 2014, Muxo was removed from the 5th District, B platoon.

25. On September 24, 2015, oral argument was held on the appeal filed by the Lawsuit Defendants before the 8th Circuit Court of Appeals, who were trying to set aside the $620,000.00 plus Judgment.

26. Just nine (9) days later, on October 3, 2015, Bonenberger was transferred to the

3rd District, B Platoon as a relief sergeant.  He was made a relief sergeant because there was a surplus of sergeants already assigned to the 3rd District.

27. As a relief sergeant, Bonenberger once again would not have the same officers regularly under his supervision, and therefore, would not evaluate officers, reducing his supervisory duties and his ability to distinguish himself as a sergeant.

28. Bonenberger timely filed a Charge of Discrimination with the EEOC and MCHR at Charge No. 560-2015-00062 related to the May 2014 reassignment.

29. He was issued a right to sue letter by the EEOC on March 7, 2016 and by the MCHR on April 28, 2016.

30. Bonenberger timely filed a Charge of Discrimination with the EEOC and MCHR at EEOC Charge No. 560-2016-00515 related to the October 2015 transfer/reassignment.

31. He was issued a right to sue letter from the MCHR on June 2, 2016.  He has requested a right to sue letter from the EEOC, which has not been received as of the filing of this Complaint.  Bonenberger will amend his Complaint to allege retaliation under Title VII based upon his October 2015 transfer/reassignment upon his receipt of a right to sue letter from the EEOC.

## COUNT I
## RETALIATION CLAIM UNDER TITLE VII AND THE MHRA

For Count I of Plaintiff's cause of action against all Defendants, Plaintiff states:

32. Bonenberger alleges and incorporates by reference as if fully set forth herein, paragraphs 1 through 31 above.

33. Bonenberger successfully pursued a discrimination lawsuit against the Department and command rank officers of the Department, which resulted in a jury returning a

6

verdict in his favor and awarding him $620,000.00 in actual and punitive damages and the court awarding an additional $170,000.00 plus for costs and attorneys' fees.

34. Defendants reassigned Bonenberger in May 2014 only ten (10) days after the district court entered its Judgment in his favor.

35. Defendants transferred/reassigned Bonenberger in October 2015 only nine (9) days after oral argument in their unsuccessful appeal of the Judgment.

36. Bonenberger's reassignments and transfer might well persuade a person in the same or similar circumstances not to challenge illegal discrimination within the Department.

37. Defendants would not have reassigned or transferred Bonenberger but for his filing of his race discrimination lawsuit, in that the stated reason(s) for these decisions were nothing but pretext to hide illegal retaliation.

38. Alternatively, Bonenberger's protected activity was a contributing factor in the decisions to reassign and transfer him shortly after the Judgment was entered and shortly after oral argument in the Lawsuit Defendants' unsuccessful appeal.

39. The actions, policies and practices complained of herein were in violation of Bonenberger's rights secured by 42 U.S.C. §2000(e) *et seq.* and R.S.Mo. §213.010 *et seq*.

40. As a direct and proximate result the acts of the Defendants as alleged herein, Bonenberger was reassigned and transferred and as a result has suffered and will continue to suffer lost promotional opportunities, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress, particularly knowing that the Defendants can retaliate against him again at any time.

41. The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Bonenberger's statutory rights as set forth above and/or was

outrageous because of their evil motive or reckless indifference to the rights of others, making an award of punitive damages appropriate to punish the Defendants and to deter them and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff David Bonenberger prays this Court enter judgment in his favor and against the Defendants and thereafter order Defendants to make him whole by awarding him damages for any and all loses or damages he has suffered including lost promotional opportunities; awarding damages to Bonenberger for his emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress; awarding Bonenberger punitive damages in such sum as this Court believes will serve to punish and deter the Defendants and others from engaging in like conduct in the future; awarding Bonenberger the costs of this action, together with his reasonable attorneys' fees; and granting such other relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT II
## <u>VIOLATION OF PLAINTIFF'S 1st AMENDMENT RIGHTS COGNIZABLE UNDER 42 U.S.C. SECTION 1983</u>

For Count II of Plaintiff's cause of action against all Defendants, Plaintiff states as follows:

42. Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 through 41 of this Complaint.

43. Bonenberger was reassigned and/or transferred by the Defendants because he exercised his First Amendment right as a private citizen to speak about an issue/matter of public concern through his successful lawsuit alleging illegal race discrimination within the Department.

44. Bonenberger's speech, and more specifically, his speech as a private citizen that he was illegally discriminated against because of his race by the Department and various command rank officers was a motivating factor and/or played a part in the Defendants' decisions to reassign and/or transfer him just ten (10) days after the district court entered its Judgment in his favor and just nine (9) days after the Department argued its appeal before the 8th Circuit Court of Appeals.

45. Bonenberger's speech constituted speech regarding a matter of public concern, illegal discrimination within the Department

46. Bonenberger's constitutionally protected interest in free speech regarding a matter of public concern outweighs any interests Defendants might have in preventing such speech.

47. Bonenberger's protected speech made at a reasonable time and in a reasonable manner did not render the operations of the City or its police department inefficient, and his speech did not disrupt City/police department operations in any way.

48. Bonenberger's reassignment and/or transfer were adverse employment actions authorized, approved, and/or ratified by the Defendants acting under color of state law to deter others from pursuing claims of illegal discrimination against the Department.

49. Bonenberger's reassignment and/or transfer taken by Defendants under color of state law violated his rights secured by the Constitution of the United States, specifically the First Amendment made applicable to the states by the Fourteenth Amendment.

50. Upon information and belief, the City has a custom, practice, or usage of retaliating against employees who complain of illegal discrimination or who otherwise exercise their 1st Amendment rights.

51. Additionally, but without waiver of the foregoing, the reassignment and/or

9

transfer decisions at issue herein were made and/or ratified by those with final policymaking authority.

52.     As a direct and proximate result the acts of the Defendants as alleged herein, Bonenberger was reassigned and/or transferred and as a result has suffered and will continue to suffer lost promotional opportunities, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress, particularly knowing that the Defendants can retaliate against him again at any time.

53.     The conduct of Defendant Dotson as set forth herein was wanton, willful, and showed a reckless indifference to Bonenberger's constitutional rights as set forth above, making an award of punitive damages appropriate to punish him in his individual capacity so as to deter him and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff David Bonenberger prays this Court enter judgment in his favor and against the Defendants and thereafter order Defendants to make him whole by awarding him damages for any and all loses or damages he has suffered including lost promotional opportunities; awarding damages to Bonenberger for his emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress; awarding Bonenberger punitive damages in such sum as this Court believes will serve to punish Defendant Dotson and to deter him and others from like conduct in the future; awarding Bonenberger the costs of this action, together with his reasonable attorneys' fees; and granting such other relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT III
## VIOLATION OF PLAINTIFF'S RIGHTS SECURED BY  42 U.S.C. SECTION 1981

For Count III of Plaintiff's cause of action against all Defendants, Plaintiff states as follows:

54. Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 through 53 of this Complaint.

55. Bonenberger engaged in protected activity when he filed and won his race discrimination lawsuit.

56. Bonenberger suffered adverse employment actions when he was reassigned and/or transferred just ten (10) days after the district court entered its Judgment and just nine (9) days after oral argument before the 8th Circuit Court of Appeals related to the Lawsuit Defendants' appeal of the Judgment in his favor.

57. A causal relationship exists between Bonenberger's protected activity and the adverse employment actions he suffered.

58. As a direct and proximate result of the acts of the Defendants alleged herein, Bonenberger was reassigned and/or transferred and as a result has suffered and will continue to suffer lost promotional opportunities, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress, particularly knowing that the Defendants can retaliate against him again at any time.

59. The conduct of Defendant Dotson as set forth herein was wanton, willful, and showed a reckless indifference to Bonenberger's statutory rights as set forth above, making an award of punitive damages appropriate to punish him in his individual capacity so as to deter him and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff David Bonenberger prays this Court enter judgment in his favor and against the Defendants and thereafter order Defendants to make him whole by

awarding him damages for any and all loses or damages he has suffered including lost promotional opportunities; awarding damages to Bonenberger for his emotional injuries, including but not limited to emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress; awarding Bonenberger punitive damages in such sum as this Court believes will serve to punish Defendant Dotson and to deter him and others from like conduct; awarding Bonenberger the costs of this action, together with his reasonable attorneys' fees; and granting such other relief as may appear to the Court to be equitable and just under the circumstances.

Respectfully submitted,

**PLEBAN & PETRUSKA LAW, LLC**


By: /s/ Lynette M. Petruska
C. John Pleban, Mo. Bar No. 24190
cpleban@plebanlaw.com
Lynette M. Petruska, Mo. Bar No. 41212
lpetruska@plebanlaw.com
2010 South Big Bend Blvd.
St. Louis, MO  63117
(314) 645-6666 - Telephone
(314) 645-7376 - Facsimile

Attorneys for Plaintiff